May it please the court, your honors, I'm Kelly Margolis-Dagger and with my co-counsel Paul Sun, I represent the appellant James Curtis Denton. Mr. Denton was convicted after a jury trial of four charges. The first charge is a drug conspiracy. It was a conspiracy to distribute and possess with the intent to distribute a mixture of substance containing at least 50 grams of methamphetamine. And then there are three independent charges that all arise from the unlawful transportation receipt use of an explosive device. Mr. Denton was convicted of all four charges at trial and he's currently serving a sentence of 360 months on the drug charge. He's also serving a concurrent sentence of 120 months on the three charges related to the explosive device. Mr. Denton raised on appeal two issues that both relate to the drug charge, the methamphetamine conspiracy, and specifically both of those issues relate to the mandatory minimum quantity that was charged in the indictment and that the jury found and that gave rise to an enhanced sentencing range under 21 U.S.C. 841B. The jury was given the option to find above 50 or below 50, right? Yes, your honor. And they found above 50, so the issue on that would be substantial evidence question taken in a light most faithful to the government. Yes, your honor, on the sufficiency of the evidence, and that is the first issue that is the sufficiency of evidence specific to that element, the drug quantity element of its count five, the drug charges count five of the second superseding indictment. The second issue that Mr. Denton raises, and again it relates to the drug quantity on count five and so I'm going to treat those two issues together. The second issue relates to a jury instruction and relates to Mr. Denton's contention that the district court committed an error a plain error by failing to give an instruction under United States v. Collins. Don't you think that's your strongest argument today? Yes, your honor, and I... I think to hash out the sufficiency of the evidence, not to cut your argument short, I'm not doing that, but the Collins error is the one that appears to be the keenest issue that I see in this case. Yes, your honor, I agree that the Collins issue is the strongest or the most significant issue on appeal. I raise the sufficiency of the evidence issue related to the drug quantity because I think it informs the plain error analysis. Let me just get to the Collins, which incorporated a Pinkerton foreseeability. You have to find that he was either involved or it's foreseeable to him, and the district court told the jury that they had to find what the defendant, Denton, conspired, which seems to be a narrower standard. In other words, had they seen, had she told the jury everything that's foreseeable to him, it would have been a broader range of evidence, but they said what he personally conspired to distribute. I don't see how you benefit from anything to get a broader instruction than what the district court gave. It seems to me the district court was pretty cautious about this, and the instructions were pretty elaborate and detailed and covered the nature of conspiracy, his involvement, what's attributable to him, and so forth. I thought you got a benefit, but answer that. That's okay. Thank you, Your Honor. The district court's instruction, which was that if the jury found Mr. Denton guilty of the conspiracy, it should then find the drug quantity that the defendant conspired to distribute or possessed with the intent to distribute. Which is foreseeability, and that was used in Collins. And so, Your Honor, on the issue of whether that instruction is narrower, I think it depends on how the jury interpreted the instruction. If the jury interpreted the defendant conspired by reference to the instruction that the court gave... One defendant in the case, and so the question was, how much did this defendant conspire to sell? And that's the way the district judge presented to the jury. So the district judge's instruction about conspiracy, the more general instruction about conspiracy and what the elements are, generally just tracking Burgos, what has to be proven for an 846 conspiracy, I think informed that instruction, then the defendant conspired to distribute or possessed with the intent to distribute what amount. And so, if the question of what substantive offense conduct is, which is did the defendant join in that conspiracy, and the conspiracy, of course, involved the government's allegation is at least 50 grams of a mixture substance containing methamphetamine, then I think that the instruction is actually broader than what Collins would permit under those Pinkerton principles. So you say it's broader? Yes, Your Honor, and I think... Do you object to it? I was not the trial counsel, but the trial counsel did not object to the instruction. You're the lawyer. Did you object to it? It was not objected to. The instruction was not objected to. So if you're complaining about it, you're complaining about plain error? It is a plain error standard of review, yes, Your Honor. So you're saying this issue is a plain error standard? Yes, Your Honor. And it's the United States v. Jeffers case that I think is the most similar in terms of the content of the instruction, and in the Jeffers case, and it's a, I believe it's a 2009 case, it's this court's opinion, that there was a plain Collins error. The court did not end up reversing on that. In the discussion of this instruction, did they discuss the Collins case? In the Jeffers case, yes, Your Honor. In this case? Oh, in the underlying case. In the trial, at the time of the discussion of the charge, and the nature of the charge, and the specifics of the charge, as to this instruction that you're complaining about, did they discuss the Collins case? No, Your Honor. No, the instruction was, the instruction given in the Eastern District of North Carolina, in this case, that trial, was in reference to the verdict form. So the court had given the instruction that would apply to the lesser included offense, of just a conspiracy to distribute a quantity of a controlled substance. And then, when explaining the verdict form to- But the verdict form said more than 50, or below 50, right? The verdict form, yes, it gave the option of- And what do you think wrong with that? With an appropriate instruction, I agree, Your Honor, there wouldn't have been anything wrong with the verdict form. An appropriate instruction that was not objected to. So nobody gave it, assuming you're right, nobody gave the judge a chance to consider. Assuming you had a plausible argument that there was something wrong with the instruction, nobody gave the judge a chance to consider it. That's absolutely right, Your Honor, yes. It was now strapped to judge, on this issue. It was not objected to, and it certainly- Because that's the reason we've got this plain error standard, because these lawyers aren't supposed to mousetrap the judge. They're supposed to raise these issues at trial. I agree, Your Honor. And get these instructions right. I agree, and it is an issue that was not raised, it is subject to plain error review only, and so know that the judge, it's not a case where the judge refused to give a column's instruction. Judge Niemeyer said, it looked like it favored you anyway. You're disarguing a technicality. Well, and Your Honor, and that's the point where I think it really, I don't think it was a favor to Mr. Denton, because there was evidence at trial, it is correct that Mr. Denton was the only defendant who went to trial, but he was charged with four other co-defendants who pleaded guilty and testified at trial, and there was evidence at trial having to do with drug transactions between his co-conspirators, in which he was not directly involved. There was also evidence of what he was involved. There was. There was a lot of evidence of what he was involved, and the evidence of what he was involved in was more than 50. If you look at it in the light most favorable to the prosecution, which we have to do, it adds up to, well, way above 50. Anyway. So, Mr. Denton's contention is that if looked at in the light most favorable to the prosecution, that the evidence is actually insufficient to support 50 grams that he was personally involved in. There is a witness, Mr. Marcus Williams, who testified and gave an estimate, and the government, I think appropriately in its response brief on appeal, interpreted that as a conservative estimate and came up with, I think, 26 grams based on that witness and another gram based on another witness for a total of 27 grams that the government contends are directly attributable to Mr. Denton under any set of circumstances because he was personally involved in those transactions. And so, the rest of that drug quantity has to be made up by reference to the acts of his co-conspirators, but the jury wasn't given any direction about how to determine what drug quantity that was generally part of the conspiracy may or may not have been attributable. The co-conspirators testified, some of them. Yes, Your Honor. And the jury wasn't given direction about how to consider what additional drug quantity on top of whatever quantity may have been sort of directly attributed to Mr. Denton may be attributed to him for purposes of making that 50-gram finding. And so, Mr. Denton does contend that the evidence is insufficient on that, but in addition, under the plain error standard of review, and I'll cut to the last prong of it, the last prong of Olano, whether the error, even if it was an error and it was plain and it affected a substantial right, whether it seriously affected the fairness, integrity, or public reputation of the proceedings, that the standard that this court has applied when there is a Collins error is to look at the evidence and ask the question, is there essentially overwhelming and uncontroverted evidence that this defendant was personally involved in distributing whatever the mandatory minimum drug quantity is? This is what the judge told the jury, which seems to me favored you. In other words, the Collins error would have given what's foreseeable to the defendant, taking language directly from Pinkerton. But this is what the court said. You will see if your verdict is guilty, you are instructed to determine the quantity of methamphetamine the defendant conspired to distribute and or possessed with intent to distribute. You choose only one drug weight. There's a blank next to, you choose only one drug weight. There's a blank next to 50 grams or more of a mixture or substance, and et cetera, and there's one for less and tells them. And if they find them guilty, they have to make one of those determinations, more or less. But the key language is that determine the quantity of methamphetamine the defendant conspired to distribute and or possess with intent. That's very personalized to Denton, and Pinkerton would have broadened that. What's the language of Pinkerton? The extent to which he was involved or is foreseeable to him, right? Yes, Your Honor, the conduct of his co-conspirators reasonably. Of course, he's standing there right there on the counter in the house when all these Under this instruction, the jury was more restricted than it would have been had they given a foreseeability standard. So that, and I think that's the point where, Your Honor, Mr. Denton would respectfully contend otherwise, that this instruction was actually broader and would have allowed the jury to rely on the conspire word in that instruction. That foreseeability is broader than just direct evidence of what he conspired to do. And I'm sorry, foreseeability is certainly broader than the direct evidence of what he participated in in terms of a direct transaction. Direct evidence of what he conspired to do, I think when the word conspire is introduced, it pulls in the conspiracy instruction, the general conspiracy instruction that the court gave and doesn't limit the jury's consideration of the drug quantity evidence to the drug quantity that was reasonably foreseeable to the defendant. And I think that Jeffers- Collins basically talks about, you have to instruct Collins, either that Collins himself was involved in the distribution of 50 grams of crack cocaine or other members of the conspiracy were involved in that amount. And those actions of the co-conspirators were both reasonably foreseeable and in furtherance of the jointly undertaken criminal activity. And I agree with that. And that seems to be broader. Each co-conspirator, by relying on the principle set forth in Pinkerton, that's what Collins said. And it seems to me that the court seemed to direct only that in which he was directly involved, as opposed to the foreseeable aspect. That's just my take on it. Now, there's another part of the instructions, and I didn't see anything that, it seemed to me the judge focused it on that fairly particularly. And I know I'm about to run out of time. May I respond, Your Honor, to your question? Of course. So that instruction that the court gave is the only one, Your Honor, hasn't missed some other instruction. And it's an explanation of what's on the verdict form. And it's what the defendant conspired to distribute or possessed with the intent to distribute, as opposed to, and I agree, that's the charge. If he had sat in a kitchen with the other co-conspirators and said, let's go and buy 50 kilograms of so-and-so, and they said, amen, we'll do it tomorrow, crime's committed, right? Yes, Your Honor. Under 846, there's no act necessary like there is under 371. So that's the crime. And he's sitting there at the table, and he agrees, he's liable for whatever they agreed to right there, right? Yes, Your Honor, in that circumstance, I agree. And if I, I apologize, I know I'm over time, if I can just complete the back half of that answer, it's the Jeffers case where the court gave what I think is a similar instruction in reference to the verdict forms. The verdict form is much like this one, and the instruction specifically says what the defendant conspired, it's the amount that the court did decide in Jeffers that that instruction was not consistent with Collins and was plain error. Again, it wasn't reversed, it was an error, and it was plain. Thank you, Your Honor. I've got a question. Was there a separate instruction that this simply defined the offense of conspiracy? In Mr. Denton's case? Yes. Yes, Your Honor, there's a separate instruction, and it generally just walks through the elements of Burgos. And how many co-conspirators got on the witness stand and testified against him? Three or four or five? Four, yes. Four. Four who were indicted. Four co-conspirators got up there and testified. Yes, Your Honor. As to what their dealings with him and what they did. Yes, Your Honor. And they were instructed generally that what one conspiracy, conspirator does, they all do. Yes, Your Honor. Okay. Well, you know, when you come back, I think you need to focus more clearly as to what it is Collins required, the foreseeability. But you also have the Pinkerton element there, too. But it's all attributable, the words of Collins, as opposed to foreseeable in Foster. But you need to look at the cases of Foster, Jeffers, and Promise and distinguish those. You're dealing with, in those cases, in some instances, major players. And this guy's a user. And you needed to partial out your evidence here to make sure that we understand, and from your perspective, how this defendant here is more likely to be a suspect in the case of Foster, Jeffers, and Promise, and not a suspect in the case of Foster, Jeffers, and Promise. Yes, Your Honor. Thank you. Thank you. All right. We'll hear from you, Mr. Rickey, is it? Good morning, Your Honors. May it please the Court, Evan Rickey, on behalf of the United States. The government is here today, Your Honors, respectfully asking this Court to affirm the judgment of the District Court in the matter of the United States versus James Curtis Denton. These two issues of the sufficiency of the evidence and the jury instruction are tied together very closely. And there is one fact or series of facts that were brought out before the jury that I think would be important to highlight for your consideration. Mr. Denton, the evidence showed that Mr. Denton was at the very core of this conspiracy. The evidence at trial talked about this group of people that were hanging out at Marcus Williams' home. You mean he was at the core of it? There's no evidence that he distributed, maybe just one little time. The major player was the house he's going to. This guy looks like a user. He is more than a user, Your Honor, because the evidence at trial specifically talked about, showed how Mr. Denton procured large amounts of pseudoephedrine. And pseudoephedrine is the essential ingredient in order to make methamphetamine. You have evidence from the National Precursor Log that showed that Mr. Denton purchased 66 boxes of pseudoephedrine. You had another number, I believe it was 12, instances where he attempted to buy pseudoephedrine at pharmacies and those were blocked because he'd been buying too much. You had evidence that he was trading other controlled substances, such as opana and suboxone, with other people for pseudoephedrine. We had evidence that in turn Mr. Denton was providing that pseudoephedrine to Marcus Williams, who was the one manufacturing, making the pseudoephedrine and then selling it. So whether you talk about a reasonable foreseeability type standard under Collins, whether you talk about more general conspiracy principles, he was the one providing, the evidence that the jury heard was that he was the one providing a large amount of pseudophet or pseudoephedrine. And you have to keep in mind that pseudoephedrine is to meth what fuel is to a race car, what bullets are to a gun. You can't make meth unless you have pseudoephedrine and he's the guy providing large amounts of pseudoephedrine to Mr. Williams, who is the one manufacturing it. The other important point, your honors. I was looking for the formula in the record. I couldn't find it. How to mix it up. It was not in there. How to make it. I guess you'd have to watch Breaking Bad in order to figure that out. But your honor, I think in terms of. How many grams did you prove? The conservative estimate that we had in our brief was 67 grams. He said he had 27. Well, so there were a number of different transactions that we highlighted. There was, of course, the purchases by Mr. Denton from Marcus Williams and we had. I'm trying to get at what you say you've proved, 67 grams. Yes, your honor. That's in the record here, in the, before the jury. Yes, your honor. And looking at, viewing the evidence in the light most favorable to the government. That's correct. Do you concede there was an instructional error? No, we don't concede that there was any instructional error. So there was no reason to object to the instruction because it was not erroneous. That, that is our position, your honor. And we feel there certainly was no error. What about the foreseeability language? Well, your honor, the, the foreseeability language wasn't there, but, but the language in the instruction, you, you talked specifically about the. Well, your honor, so. He says y'all didn't even talk about Collins at the trial. We, we did not talk about Collins in, in the trial and that was not objected to. After the instructional thing. Indeed. And, and it was. Well, but you're all obliged to get the instructions right. I beg your pardon? You, you, you all, not just the judge and the defense lawyer, but the government has some interest in getting the instructions right too. You don't want to come up here and have to argue plain error. Indeed, indeed, your honor. And, and we, we don't concede that there, that there was any error because. Well, I know you don't, but I, but I mean, you've already said that, but, but, but, but they get, you gave them an argument maybe because you didn't, didn't get that foreseeability language in there. Well, your honor, given the fact that the charge was a conspiracy and given the fact that the court avoided the type of error that. Collins was a conspiracy case. Indeed it was. But for example, in the foster. All these drug cases are conspiracies. They're all conspiracies. That's about one, that's my recollection they are. In, in, in the foster decision, this court held that, that you can't hold a particular defendant responsible for all of the drugs in the conspiracy. And. That's how you end up with this kind of instruction. Indeed. And, and what the, what the jury instructions did in this case was talk about specifically what the defendant conspired. And you also had the superseding indictment, which was sent back to the jury, which talked again, specifically about the defendants, what he conspired to. And then on top of that, you had the jury instructions, which asked the jury, if he's guilty of conspiracy under count five, is it less than 50 grams? You had the very form. The very form. It's the verdict. The verdict form. Verdicts having to be specified. That's right. I think that's probably in there because it's Collins and it's progeny. Exactly. And, and because of foster and to make sure that we make an individualized determination. So this ties back to the issue of the sufficiency of the evidence, because here the evidence showed that Mr. Denton was part of this conspiracy almost for the entire length of the conspiracy. He was at the home of Marcus Williams. One of the witness testified several times a week. We have witnesses testifying that he's not only bringing that he's purchasing large amounts of Sudafedrin, bringing that to Mr. Marcus Williams. He's trading. You talked about boxes of that stuff. How's that translate into grams of drugs? So generally what the evidence. Was that what I'm asking before the jury? It was before the jury. So what came out before the jury is that generally one box of Sudafedrin is worth about half a gram of meth. So that didn't go into how, how much Sudafedrin is generally one box is going to get you half, half a gram. What you had to prove on according to the verdict form was more than 50. More than 50. And you're talking about boxes. So you've got to get translated. And you're saying that does, it counts half a gram for each box. Half a gram is what, if you're thinking of Sudafed as currency that you can trade for meth, they didn't go into how much Sudafed, how much 66 boxes of Sudafed would, how much meth would that make? That, that was not part of the, that was not part of the evidence. That wasn't part of the trial. But in terms of getting to that 67 gram figure that we have, we have the purchases that Mr. Denton himself made. But we also have the sales that Mr. Marcus Williams made to and, and we believe that those are part of the conspiracy that, that, that Mr. Denton was involved with, because again, he was the one providing. That's not necessarily what you believe. You need to get to, you need to say, I think the jury found that was part of it. Indeed, indeed, Your Honor. I mean, this, this is the evidence. That's what the jury found. That's right. This is the evidence. That's what we have to deal with, what the jury found. Indeed, Your Honor. That's the evidence in the light most favorable to you, because you got the verdict. That's exactly right, Your Honor. In the light most favorable to the government, what, what did the jury see? What did the jury find? And... So tell me the connection with the Jeffers case. Looks like an interesting case that has some applicability here. The Jeffers case is one in which they had basically the same kind of case. This guy, Jeffers, was doing, he was supplying this pseudometh, the product that makes the meth too. They had a quantity of drugs. The court went through the analysis that says, it's Collins' error, because the trial court, in essence, made an instruction to the fact that, well, we're going to look at, you know, the quantity that was here. And the court says, no, you did not follow the foreseeable ability as to the defendant to which can attribute him on the Collins, so Collins' error. Then it was a plain error. And the court then analyzed the plain error aspect of it and says, oh, it's plain error. But then it took the turn and says, after finding it was a Collins' error, it was a plain error because it didn't object. Then it said, we're going to go, but the plain error itself, because of overwhelming evidence, did not affect the fairness, integrity, and public reputation of the judicial proceedings, and therefore held against it. So in that instance, contrary to what you're arguing here, the court did find a Collins' error. The court did find a plain error, but then nonetheless went the other direction for the did not affect the fairness, integrity of the proceedings. Indeed, Your Honor. Is this a similar case? No, Your Honor. I don't believe it is a similar case. Those facts, when you're dealing with the quantity of the drugs there, the type of instruction that was given in that case in Jeffers, as was in Foster, it's hard to distinguish that from not calling that a Collins' error, from not saying it was plain error. But then if you don't take the term and go into whether or not it was a fairness type thing, that's what they did in Jeffers. Indeed, Your Honor. And in our brief, we cited to the Howard decision of this court where this court held that a verdict sheet that asked for an individualized determination, that that kind of satisfied the requirement in Collins. And this goes, so even if you were to find that there is an error, we certainly believe that you can't say that there is a plain error, because you do have this Howard decision enunciated by this court. And then if you go to the fourth step in terms of the fairness and the reputation of the judicial proceedings, our view is that the evidence that was presented to the jury was overwhelming. It was largely uncontroverted. You had four of the five members of the conspiracy testifying against Mr. Denton. So we believe there was ample evidence, uncontroverted evidence. So even if you were to get to that fourth prong of the plain error test, we believe- Nobody said these conspirators were lying? Well, the co-conspirators were cross-examined, certainly. Well, did the defendant argue they were lying? No, that was not the thrust. They were saying they were uncontroverted. Yes. Nobody said they were making any of this up? No, for example, there was nothing at the trial with regard to Giles Coggins, for example, who purchased about 15 grams of meth from Marcus Williams or Jerry Lamar Adams, who purchased about 25 grams of meth. No one at trial said, well, that never happened. Those transactions never occurred. Did the defense lawyer in closing argument say they were lying? I don't recall specifically the arguments that were made. You could get up there and say all the conspirators are lying. Of course, yes. Was that controverted? Well, this, as the court is aware, this case had a big additional component to it, namely the explosive devices and the bombing. And that explosive device charges aren't even on appeal. Indeed, Your Honor. Those are not on appeal. Tried to blow somebody's car up, and it didn't get no appeal about that. Indeed, Your Honor. So we, as stated earlier, we don't believe there was any error. We certainly, in view of the Howard decision, we can't say that there's plain error. That's why I'm having some difficulty because of the Jeffords case. And it goes into length. It's got an instruction not much different from what you're talking about here. And then the court then goes, and it even brings up Faust and says, we explained there that if the evidence is overwhelmingly established, and the defendant was personally responsible, and the trial assertion is properly focused on the trial, he committed offenses, and not only that the drugs were foreseeable to him, then you don't recognize a plain Collins error. But this court in Jeffords says, but here, this was a plain error. And once it reached that plain error, it then went further and says, we nevertheless are satisfied that it can be upheld because the Collins error did not seriously affect the fairness, integrity, public reputation of the judicial proceedings. So the court in that case found error, Collins error, found plain error, and then went another step. Are you at the other step is what I'm asking. Are you, you seem to be hopping on. It's not a Collins error. And if it is, it's not plain error. But Jeffords seems to have a different level of analysis here that you can find those, which those facts fit. As in Daniels, Daniels seems to be very much on point with this case. But then reached this additional step as to whether it seriously affected the fairness, integrity, or public reputation in judicial proceedings. So you're right. I'd say in this case, we had. And I will add, the reason it did it is said, overwhelmingly, the evidence established that Jefferson was personally responsible for the conspiracist's distribution of the drugs. It wasn't that he was sitting in a room. It wasn't that he was a user. It wasn't that he supplied, because he was supplying the suit of pediment. He was doing that. But the court says, oh, he was personally involved for the distribution of these drugs. So your honor, in this case, you have the jury, which went back to deliberate with a copy of the indictment, which talked. I want to stick with Jeffords, because again, Jeffords, as the case said, he said he was the biggest dealer at that hotel. So I mean, that's the Jeffords case we're dealing with here and comparing those facts with here. Again, if you compare the facts, the facts here are that Mr. Denton was at Marcus Williams' home several times a week over a two-year period. He is procuring Sudafed from multiple different sources. It was Jeffords. But Jeffords, that was not the basis upon which they used that to do that. They found plain error there. Says it right here. This constituted plain error. And he was involved in Sudafediment the same way. Indeed, your honor. And in Howard, the court found no Collins error in a case that dealt with, it was money laundering, sex trafficking, and also a crack, more than 50 milligrams of cocaine base. And in that case, this court found that a individualized verdict form sort of satisfied the requirement in Collins. And I think that's maybe the most important point, is that you had one defendant on trial. The jury had a copy of the indictment. They were instructed about what the defendant was specifically responsible for. They had a verdict form, which asked them if he was guilty of conspiracy to possess with intent to distribute methamphetamine. Was it more than 50 milligrams? Was it less than 50 milligrams? So they- It was a gram. Pardon? Grams. Beg your pardon, your honor, grams. So the jury was properly instructed. And so we don't believe there was any error, much less plain error. And certainly, even if you were to say, go as far as the court did in Jeffers and say, OK, there was a plain error, which we don't concede. You have to look at all of the evidence that the jury saw, all the testimony that they heard, and find that even if there was a plain error, it would not affect the reputation of the judicial proceedings because it was very, very strong evidence as to the methamphetamines, as to Mr. Denton's involvement at every step of the conspiracy. Now, there are cases where you have people involved maybe at certain parts of the conspiracy, but not in the entire scope of the conspiracy. You have other factual scenarios where perhaps one member of the conspiracy is engaging in that the defendant, specific defendant, may or may not have been aware of. But none of those types of factors are present here. Hence the strength of the evidence. He got a powerful, strong sentence for this. He did, your honor. 360 bucks. He got three times as much as he got for trying to blow up the guy in the car. Indeed, your honor. Is something wrong with the guidelines? Well, your honor, it's- I mean, it looks to me like trying to blow up an automobile or putting a bomb in an automobile and trying to kill somebody would be worse. Your honor, I mean, that's- The drug's pretty bad. I mean, it is bad. But it looks like you get off easy for blowing somebody up. Well, your honor, the statutory maximum on the explosive charges was 10 years. The statutory minimum maximum on the drug conspiracy was minimum of five, maximum of 40. Maybe it's the congressman's fault there. Well, I'm not assigning blame to anyone. Just saying that that was- It's not the guidelines, though. That's how the guidelines are. That's how congress has written the statute. So that's what we were dealing with. I think one, perhaps one factor that weighed into all this is that there was no injury with the attempted bombing. I don't know. But that- It got the maximum anyway, you just told me. Indeed, your honor. So it, I mean, the guidelines are the way that they are. The statute is as it is. And, you know, that's where the court ended up. I would note he did, the guideline range was 360 to 840 months. The court gave 360 months. It's a very long sentence, but it is at the bottom of the guideline range. Everybody else got a lesser sentence, though, didn't they? Indeed, they did, your honor. Including the guy whose house was there. He's a big deal in the whole bit. But they pled guilty. That's the big difference, isn't it? It's a very big difference, your honor. And that's just- They came in and cooperated. I beg your pardon, your honor? They came in and cooperated. They did. They did come in and cooperate. And that's just how- It's called the FIFO rule. See what that means? No, your honor. First in, first out. First in, first out, indeed. First in all, in the prosecutor's office and telling everybody, first one get out of prison. Indeed, your honor. And that's how the system worked. Like the accounting system. Indeed, your honor. And that's how the system worked. And that's what happened here in this case. Your honor, my time is almost up. If the court doesn't have any further questions, I don't have any further on these two issues. There is the FIFO. That's the last in and first out. That would work, too, wouldn't it? If you're the first out. They usually don't get the first out. It doesn't usually apply. Thank you, Mr. Rickey. Thank you very much, your honors. Thank you. Thank you, your honor. Thank you. Your honors, I want to respond specifically to the question that Judge Nguyen asked at the end of my opening argument. And there are four cases, your honor, noted, Jeffers, Foster, Daniels, and Promise. And I think that in terms of the content of the instruction, and I think I've said this, it's most similar to, in wording, it's most similar to Jeffers. Where the jury was asked to find on the special verdict form that the defendant conspired to distribute the quantity, the mandatory minimum quantity. And so it had that same phraseology, defendant conspired. In terms of what distinguishes Mr. Denton's case from those cases, so three of them were not reversed on plain error review. Daniels was reversed. But what distinguishes Mr. Denton's case from Foster and from Jeffers and from Promise? Jeffers, they found error, found plain error, and walked into this business of, well, it didn't affect the fairness of the trial, the integrity of it. So when we began to analyze this case using that, that seems like to me a good starting point. I agree with that, your honor. I think the first three prongs of the plain error test are satisfied for exactly the same reasons that they were in Jeffers. And then it all comes down to that. That might be a little too mechanical. It seems to me the problem with conspiracies, you have a spoken wheel conspiracy, you have different wings of the conspiracy doing different things, or you have a timing issue. A person comes in late in the conspiracy and theoretically he could be charged with the full scope of the conspiracy that he's in. He doesn't have to know of everything that's happening. And the prophylactic that's provided by Collins is that you have to link up the drugs to this particular defendant. And not only that, you have to link it up or say it's reasonably foreseeable to him, which is a pretty relaxed standard. But let's just say that that's what it's designed for. In this case, you had the defendant basically operating coterminously. He was working at the house two or three times a week over a period of two years. The district court instructed the jury, and this is what the court said, the government must prove beyond a reasonable doubt that the defendant intended to distribute the controlled substance alleged. And it then went back and focused on the defendant also when it did the form, the 50 grams form. So it was not confronted with a situation where drugs would be imputable to this defendant in areas where he was not involved. He was the only defendant. All the evidence was presented with respect to him. And the judge said directly, find out how much this defendant conspired to do. It would have broadened the scope of the government's reach if it said not only what this guy conspired to do, but was foreseeable to him in the conspiracy, which would have allowed the government to go into things he never was even involved in or didn't see or didn't know about. And so I think the government makes an argument, and it seems to have some weight to it, that you don't need the foreseeable aspect of Collins in this case so that there was no error in what the court actually said. In this case, the court tailored it to this case. Now, it did not discuss Collins below, of course, and did not use that language that we've quoted from Collins. But the question is, is it needed in the circumstances of this particular case, particularly when the court tailored these instructions to Denton alone? It is needed, Your Honor, and the reason it's needed is this. The drug quantity that the government argues in its brief was directly related to Mr. Denton. In other words, he bought or sold that quantity. It was 27 grams. Even under Collins, he didn't have to be involved in the sale. This is a conspiracy charge. And if he's standing there next to his co-conspirator and his co-conspirator is selling it to a customer, I mean, he's charged with that too, even under Collins. So the evidence in this case really focused on this Williams house, right, where they went regularly and brought stuff in, boxes of Sudafed in, and Williams would cook it up or make it up, whatever the formula is, and give the meth out on a regular basis in the presence of or actually to the defendant in this case. And I'm not sure there's any factual questions that implicated. Maybe I don't understand the full range of facts, but that implicated Collins. I think in answering the question, I think it's important to note in the Jeffers case, which is pretty much on point, there's a very well-written concurrence there that sort of alludes to these very type of issues here. But that concurrence acknowledges that that problem is not being solved in this case, and we're going to have to wait for the Supreme Court to do it. But the Supreme Court hasn't done it. So we're kind of stuck where Jeffers took us on this. Although I appreciate the argument being articulated, but it's exactly what was said in the concurrence in Jeffers to some extent. And your honors, I realize I'm over my time again. May I respond briefly? Please. I think that where this case differs from Jeffers is the evidence in Jeffers was generally distributed. And so, your honor, Judge Neumeier, when you pointed out that conspiracy is broader than what, you know, it's not a distribution charge, it's a conspiracy to distribute. It was an 846 charge. Yes, your honor. It was an 846 charge. And of course, the underlying conduct that they conspired to commit is distribution and possession with the intent to distribute. But the overwhelming evidence in the Jeffers case, and so why the court explained that was not going to notice the plain error, even though it affected the defendant's substantial rights, was there was actually evidence that the defendant was personally involved in, from multiple witnesses, was personally involved in distributing a quantity that was in excess, well in excess of the mandatory minimum quantity. And I think that's what distinguishes it from this case, because there is evidence, your honors, that of drug quantity that was a transaction not between Mr. Denton and someone else, but transactions among and between co-conspirators. In fact, the two witnesses that the government noted in its argument, Mr. Coggins and Mr. Adams, they never bought or they didn't testify about buying anything from or selling anything to Mr. Denton. It was all with Marcus Williams. And so, yes, there was evidence. Was Mr. Denton there in the room at the time when this was being done? On some occasions, there was evidence that he may have been there on some occasions. He was also incarcerated for part of the conspiracy period. So absent some direction to the jury to consider how much drug quantity could be attributed to Mr. Denton under those conspiracy principles, there was no way for the jury to get to that 50 grams. So unlike in Jeffers, where the jury could get to the 50 grams just based on what passed right through the defendant's hands, they couldn't do that in Mr. Denton's case. Thank you. It might be a shame you all didn't preserve this a little better. Thank you, Your Honor. Thank you. Ms. Dagger, I notice you're court appointed and I want to recognize that service. It's an important service. Thank you. It's the only way we function and it works well. Thank you very much. We'll come down and greet counsel and then proceed on to the last case.
judges: Paul V. Niemeyer, Robert B. King, James A. Wynn Jr.